IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

_____

Memorandum for the United States Regarding
Applications for Leave to File Second or Successive
Section 2255 Motions Based on
*Johnson* v. *United States*, 135 S. Ct. 2551 (2015)

_____

## INTRODUCTION AND SUMMARY

In response to the Court's invitation, the United States respectfully submits this memorandum setting forth its views on the appropriate disposition of applications by federal defendants for leave to file second or successive motions under 28 U.S.C. § 2255(a) that seek to vacate sentences imposed under either the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (ACCA), or the federal Sentencing Guidelines, in light of the recent decision in *Johnson* v. *United States*, 135 S. Ct. 2551 (2015), which held that the residual clause in the ACCA's definition of a "violent felony" is unconstitutionally vague.[1]

_____

[1]  We have served a copy of this memorandum on all of the Public Defenders within this Circuit.  We respectfully request that the Clerk's Office also lodge this memorandum on the docket in future cases where federal defendants seek leave to file a successive Section 2255 motion based on *Johnson*.

The government's position is that the Court should grant authorization where a defendant makes a *prima facie* showing that, in light of *Johnson*, he was erroneously sentenced under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (ACCA), and that the Court should deny authorization in cases where a defendant claims, in light of *Johnson*, that he was erroneously sentenced as a career offender under the federal Sentencing Guidelines, U.S.S.G. § 4B1.1. The new rule of constitutional law adopted in *Johnson* has substantive effect as applied to armed career criminals: it results in an enhanced sentence that exceeds the otherwise-applicable unenhanced statutory maximum and thereby subjects the defendant to "a punishment that the law cannot impose." *Schriro* v. *Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2523 (2004). As such, this new substantive rule has necessarily been "made" retroactive by the Supreme Court to ACCA cases on collateral review. See *Tyler* v. *Cain*, 533 U.S. 656, 663, 121 S. Ct. 2478, 2482 (2001); see also *id*. at 667-669, 121 S. Ct. at 2487-2489 (O'Connor, J., concurring) (explaining how and why substantive rules have logically and necessarily been "made" retroactive to cases on collateral review).

The *Johnson* rule does not have substantive effect with respect to career offenders, however, because an error in calculating a defendant's

guidelines range cannot and does not alter the statutory range within which the sentence is imposed, and the defendant could validly receive the identical sentence without the enhancement.    In the guidelines context, then, *Johnson* regulates how the sentence is imposed, and is therefore a new procedural rule that has not been "made" retroactive by the Supreme Court to cases on collateral review.

## OVERVIEW

Federal defendants who completed their initial round of collateral review under Section 2255 before *Johnson* was decided may not file a "second or successive" Section 2255 motion invoking that decision unless they obtain pre-filing authorization from the court of appeals.    See 28 U.S.C. § 2244(b)(3)(A); *Burton* v. *Stewart*, 549 U.S. 147, 152, 127 S. Ct. 793, 796 (2007) (per curiam); see also *Farris* v. *United States*, 333 F.3d 1211, 1216 (11th Cir. 2003).    The courts of appeals, in turn, may authorize the filing of a successive Section 2255 motion in cases where the defendant makes a "prima facie" showing – *i.e.*, "a sufficient showing of possible merit to warrant fuller exploration by the district court," *In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003) – that (as relevant here) his claim relies on "a new rule of constitutional law, made retroactive to cases on

collateral review by the Supreme Court, that was previously unavailable."
28 U.S.C. § 2255(h)(2); see also 28 U.S.C. § 2244(b)(3)(C).

1.    *Johnson*'s holding that the ACCA's residual clause is unconstitutionally vague is "a new rule of constitutional law * * * that was previously unavailable."    No pre-*Johnson* precedent dictated the conclusion that the residual clause was unconstitutionally vague; to the contrary, in two pre-*Johnson* decisions, the Supreme Court rejected the dissent's claim that the clause was vague.  To conclude as it did, *Johnson* had to "overrule[] * * * [those] contrary holdings," 135 S. Ct. at 2567, and "there can be no dispute that a decision announces a new rule it if expressly overrules a prior decision."  *Graham* v. *Collins*, 506 U.S. 461, 467, 113 S. Ct. 892, 897 (1993).

2.    For purposes of Section 2255(h)(2), then, the determinative question is whether this new, previously unavailable rule of constitutional law has been "made retroactive to cases on collateral review by the Supreme Court."  The Supreme Court's decision in *Tyler* provides the framework for deciding that question.  *Tyler* establishes that if the *Johnson* rule is substantive, then it has necessarily been made retroactive by the Supreme Court to cases on collateral review and can support authorization to file a successive motion; but if the *Johnson* rule is

procedural, then it has not been made retroactive by the Supreme Court to cases on collateral review and cannot support an order authorizing a successive motion.

a.  As applied to the ACCA, *Johnson* is a substantive rule, and thus, it has been "made" retroactive by the Supreme Court to ACCA cases on collateral review.  A rule that alters the statutory sentencing range for a crime and results in the imposition of "a punishment that the law cannot impose," *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523, is a substantive rule. *Johnson* is such a rule with respect to the application of the ACCA:  in cases where the defendant's ACCA sentence depended on the residual clause, the defendant has now received an enhanced sentence of at least 15 years' imprisonment (the statutory mandatory minimum) when the otherwise-applicable unenhanced statutory maximum for the crime would be 10 years' imprisonment.  Compare 18 U.S.C. § 924(e) with 18 U.S.C. § 924(a)(2).  The misapplication of the ACCA resulting from *Johnson*'s invalidation of the residual clause (no less than from the pre-*Johnson* decisions that narrowly interpreted the ACCA) thus has substantive effect. See *Bryant* v. *Warden*, 738 F.3d 1253, 1278 (11th Cir. 2013) (holding that a misapplication of the ACCA based on *Begay* v. *United States*, 553 U.S. 137, 128 S. Ct. 1581 (2007), was a substantive rule under *Schriro*).

Accordingly, if an ACCA defendant can demonstrate that, without the residual clause, he would not otherwise have been subject to the ACCA's enhanced penalties, then he has made a *prima facie* showing that his claim satisfies Section 2255(h)(2) and the Court should grant his application for leave to file a successive Section 2255 motion in the district court. See *Price* v. *United States*, 795 F.3d 731, 733-735 (7th Cir. 2015) (granting ACCA defendant's request for authorization to file a successive Section 2255 motion based on *Johnson*). But see *In re Gieswein*, --- F.3d ---, 2015 WL 5534388, at \*3-\*5 (10th Cir. Sept. 21, 2015) (denying authorization in an ACCA case).[2/]

b.   As applied to the guidelines, however, *Johnson* is a new, non-watershed rule of procedure that has not been "made" retroactive by the Supreme Court to cases on collateral review. *Johnson* did not address the status of the identically-worded residual clause in the career-offender guideline, see U.S.S.G. § 4B1.2(a), or the antecedent question of whether the guidelines are amenable to vagueness challenges at all. The

---

[2/]   On September 23, 2015, two days after the decision in *Gieswein*, the defendant in *In re Jackson*, No. 15-8098 (10th Cir.), filed a petition for initial hearing en banc urging the full Court to reconsider *Gieswein* in light of the conflict it created with *Price*. That petition remains pending as of the date this memorandum was submitted.

government's position is that the guidelines are subject to vagueness constraints and that *Johnson* invalidates the guidelines' residual clause, though we recognize the Court recently held otherwise with respect to the advisory guidelines' residual clause. See *United States* v. *Matchett*, --- F.3d ---, 2015 WL 5515439, at *6-*8 (Sept. 21, 2015). While *Matchett* would mean that a sentencing court did not commit constitutional error by relying on the advisory career offender guideline's residual clause, the Court could choose to decide these cases on the separate ground that *Johnson* has not been "made" retroactive in any guidelines cases on collateral review.[3/]   Unlike misapplications of the ACCA, misapplications of the guidelines cannot (and do not) alter the statutory sentencing range for a crime or expose the defendant to a punishment that the law could not impose. Such errors are instead procedural because they regulate how the sentence is imposed. And because this new procedural rule does not rank as watershed, it has not been "made" retroactive by the Supreme Court to cases on collateral review.

---

[3/]   By rule, and absent an extension, a petition for rehearing or rehearing en banc, if any, would be due in *Matchett* on or before October 5, 2015.

## DISCUSSION

This memorandum is divided into three parts. In Part I, pp. 8-15, *infra*, we review the legal principles that govern the analysis of whether the Supreme Court has "made" a new rule retroactive to cases on collateral review for purposes of Section 2255(h)(2). In Part II, pp. 16-32, *infra*, we apply those principles to explain that *Johnson* has been "made" retroactive to ACCA cases on collateral review; that applications for authorization to file successive Section 2255 motions in ACCA cases should therefore be granted; and that the full Court may wish to convene en banc to decide this important question. And in Part III, pp. 33-43, *infra*, we apply the same principles to explain that *Johnson* has not been "made" retroactive to guidelines cases on collateral review, and that applications for authorization in such cases should therefore be denied.

## I. New Substantive Rules Of Law Have Been "Made" Retroactive To Cases On Collateral Review.

The analysis of whether the Supreme Court has "made" a new rule retroactive to cases on collateral review dovetails with the question of whether the rule is substantive or procedural. See *Bousley* v. *United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998) ("Th[e] distinction between substance and procedure is an important one in the [collateral

review] context."). "New substantive rules generally apply retroactively * * * [but] [n]ew rules of procedure * * * generally do not apply retroactively." *Schriro*, 542 U.S. at 351-352, 124 S. Ct. at 2522-2523.

In *Tyler*, the Supreme Court explained that, when it announces a new substantive rule, it has logically and necessarily "made" that rule retroactive to cases on collateral review, see *Tyler*, 533 U.S. at 663, 121 S. Ct. at 2482, and thus, an application for leave to file a successive motion may be authorized when the other statutory requirements for authorization have been met; a subsequent case declaring the rule retroactive is not required, *id*. But the same cannot be said when the Supreme Court announces a new, non-watershed rule of procedure: such rules have not logically been "made" retroactive to cases on collateral review, and cannot therefore support a successive Section 2255 motion unless and until there is a subsequent Supreme Court decision declaring that the rule is retroactive. *Id*.

## A.    Substantive And Procedural Rules.

Substantive rules can result from judicial decisions construing a federal statute or the Constitution.

A substantive statutory rule includes a rule that narrows the interpretation of an element in a federal criminal statute, thereby curtailing

the statute's reach. See *Bousley*, 523 U.S. at 620-621, 118 S. Ct. at 1610 (holding that the narrowing interpretation of the "use" element of the crime defined in 18 U.S.C. § 924(c) adopted in *Bailey* v. *United States*, 516 U.S. 137, 116 S. Ct. 501 (1995), was substantive). Substantive constitutional rules include rules that "place particular conduct or persons covered by [a] statute beyond the [government's] power to punish." *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523. Substantive conduct-restricting constitutional rules include decisions holding that the First Amendment prohibits criminal prosecution for flag burning. See, *e.g.*, *United States* v. *Eichman*, 496 U.S. 310, 110 S. Ct. 2404 (1990); *Texas* v. *Johnson*, 491 U.S. 397, 109 S. Ct. 2533 (1989). Substantive penalty-restricting constitutional rules include decisions holding that the Eighth Amendment bars the death penalty for certain offenders. See, *e.g.*, *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005) (juveniles); *Atkins* v. *Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002) (intellectually disabled). These new rules are retroactive in cases on collateral review because they "'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the

law cannot impose upon him." *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523

(quoting *Bousley*, 523 U.S. at 620, 118 S. Ct. at 1610)).[4]

Procedural rules, by contrast, include rules that "regulate[] only the

manner of determining the defendant's culpability," *Schriro*, 542 U.S. at

353. Examples include a rule that requires facts to be treated as elements

of a crime, see *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000),

---

[4] In the government's view, a new rule is substantive if it expands the range of possible sentencing outcomes beyond that which previously existed, even if it does not categorically prohibit the imposition of a certain punishment. See U.S. Amicus Br., *Montgomery* v. *Louisiana*, No. 14-280 (filed July 29, 2015) (arguing that *Miller* v. *Alabama*, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment forbids the imposition of a mandatory life sentence on a juvenile homicide offender and thereby required the availability of lesser sentences, is a substantive rule retroactively applicable on collateral review). But see *In re Morgan*, 713 F.3d 1365, 1367-1368 (11th Cir. 2013) (holding that *Miller* was not a substantive rule). (The Supreme Court granted review to resolve disagreement in the lower courts on *Miller*'s retroactivity and scheduled argument for October 13, 2015.) Conversely, a new rule that broadens the sentencing court's discretion without changing the lawful range of sentencing outcomes does not apply retroactively to cases on collateral review. For example, the remedial opinion in *United States* v. *Booker*, 543 U.S. 220 (2005), expanded sentencers' discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory. *Id.* at 245-268. So did *Pepper* v. *United States*, 562 U.S. 476, 131 S. Ct. 1229 (2011), by excising 18 U.S.C. § 3742(g)(2). 562 U.S. at 493-498, 131 S. Ct. at 1242-1244. Neither decision is retroactively applicable on collateral review because neither expanded the range of possible sentencing outcomes. See, *e.g.*, *Duncan* v. *United States*, 552 F.3d 442, 445-447 (6th Cir. 2009) (*Booker*'s remedial holding); *Blount* v. *United States*, 2012 WL 2594109, at \*\*3, 4 & nn.9-10 (E.D. Pa. Jul. 5, 2012) (unpub.) (*Pepper*).

or a rule regulating the admissibility of certain evidence at trial, see *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). Unlike substantive rules, these rules do not forbid prosecution or conviction for a crime or otherwise alter the permissible range of outcomes; rather, they concern *how* the ultimate determination (guilt or innocence or the appropriate sentence) must be reached. In the case of *Crawford*, for example, the rule requires an opportunity for cross-examination of an out-of-court declarant; in the case of *Apprendi* and its progeny, the rule requires a jury finding as to the operative fact beyond a reasonable doubt. Neither changes the range of legally permissible outcomes.

New procedural rules therefore do not implicate the concerns that justify the retroactive application of new substantive rules: they do not produce a class of persons who have been convicted of non-criminal conduct or alter the range of sentences for which the defendant is eligible, but instead "merely raise the possibility" that the now-invalid procedure might have affected the course of the proceeding. See *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523. This "more speculative connection" to outcomes has led the Supreme Court to deny retroactive effect to new procedural rules in federal collateral review and thereby protect the finality of

-12-

criminal judgments.  See *Teague*, 489 U.S. at 311. 109 S. Ct. at 1076; see also *Bousley*, 523 U.S. at 620, 118 S. Ct. at 1610.

**B.    Supreme Court Decisions Announcing New Substantive Rules Have Been "Made" Retroactive By The Supreme Court To Cases On Collateral Review**.

In *Tyler* v. *Cain*, 533 U.S. 656, 121 S. Ct. 2478 (2001), the Supreme Court addressed the meaning of the statutory phrase "made retroactive to cases on collateral review by the Supreme Court" in interpreting the state-prisoner analogue to Section 2255(h)(2).

Tyler was a Louisiana state prisoner who sought authorization to file a successive Section 2254 habeas petition invoking *Cage* v. *Louisiana*, 498 U.S. 39, 111 S. Ct. 328 (1990) (per curiam), which held that a Louisiana jury instruction defining "reasonable doubt" was constitutionally defective.  Tyler argued that *Cage*, read in conjunction with *Sullivan* v. *Louisiana*, 508 U.S. 275, 113 S. Ct. 2078 (1993), which declared a *Cage* error to be a structural error, had "made" *Cage* retroactive to cases on collateral review.  The Supreme Court agreed with the general proposition that, "with the right combination of holdings, the Court could * * * make a rule retroactive over the course of two cases," 533 U.S. at 666, 121 S. Ct. at 2484, but it concluded that *Cage* was a new procedural

rule and that no subsequent case, including *Sullivan*, necessarily dictated *Cage*'s retroactivity to cases on collateral review.  *Id*.

Justice O'Connor concurred in the opinion, and wrote separately to "explain more fully" her view as to when and how the Supreme Court could "make" a new rule retroactive to cases on collateral review.  533 U.S. at 668, 121 S. Ct. at 2485; see also *In re Henry*, 757 F.3d 1151, 1160 (11th Cir. 2014) (treating Justice O'Connor's concurring opinion in *Tyler* as instructive).  Justice O'Connor agreed that "the clearest instance * * * in which we can be said to have 'made' a new rule retroactive" is where "we expressly have held the new rule to be retroactive in a case on collateral review and applied the rule to that case," *id*., but she also agreed that "a single case that expressly holds a rule to be retroactive is not a *sine qua non* for the satisfaction of this statutory provision."  *Id*.  In her view, there will be some cases where the combination of the holdings of prior cases will logically and necessarily dictate the retroactivity of a new rule, and in those instances, the new rule can be said to have been "made" retroactive to cases on collateral review without a third case expressly so declaring.  See *Tyler*, 533 U.S. at 668-669, 121 S. Ct. at 2485-2486 (O'Connor, J., concurring) ("Thus, if we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two

that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review."); see also *In re Henry*, 757 F.3d at 1160 ("[L]ike our sister circuit courts, we have recognized 'retroactivity by logical necessity.'").

In Justice O'Connor's view, it is "relatively easy to demonstrate the required logical relationship" where a new substantive rule is at issue. *Id*. In that context, "Case One" is *Penry* v. *Lynaugh*, 492 U.S. 302, 109 S. Ct 2934 (1989), abrogated on other grounds, 536 U.S. 304, 122 S. Ct. 2242 (2002), which identified two types of substantive constitutional rules: those that "forbid[] criminal punishment of certain primary conduct" and those that "prohibit[] a certain category of punishment for a class of defendants because of their status or offense." *Id*. at 329-330; accord *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2522. Accordingly, when a subsequent case announces a new substantive rule of constitutional law as defined by *Penry*, it will "necessarily follow[] that [the Supreme] Court has 'made' that new rule retroactive to cases on collateral review," 533 U.S. at 669, 121 S. Ct. at 2486; a third case expressly declaring that the rule of the second case is retroactive is not required because the combined effect of the first two cases already establishes that proposition. See *id*.; see also *id.* at 672-673 (Breyer, J., dissenting) ("The matter is one of logic. If Case

One holds that all men are mortal and Case Two holds that Socrates is a man, we do not need Case Three to hold that Socrates is mortal.").

As Justice O'Connor also explained, while the logical-implication approach to retroactivity is clear for new substantive rules, it is "less straightforward" when a new procedural rule is at issue because, in that context, there is no "Case One"-type precedent like *Penry* declaring such rules retroactive (except, perhaps, for a new procedural rule that is a watershed rule on par with *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963)). See *Tyler*, 533 U.S. at 669-671 (O'Connor, J., concurring).

## II.   ACCA Cases.

### A.   *Johnson* Is A New Substantive Rule As Applied To The ACCA And It Has Been "Made" Retroactive By The Supreme Court To ACCA Cases On Collateral Review.

Federal law makes it a crime for a convicted felon to possess a firearm.   See 18 U.S.C. § 922(g)(1).   The default statutory maximum sentence for this offense is 10 years' imprisonment, with no mandatory minimum. See 18 U.S.C. § 924(a)(2).  If, however, an offender's criminal history includes at least three prior convictions for a "serious drug offense" or a "violent felony," then the ACCA mandates a minimum sentence of at least 15 years and permits a maximum sentence of life.  See 18 U.S.C.

-16-

§ 924(e); *Custis* v. *United States*, 511 U.S. 485, 487, 114 S. Ct. 1732, 1734 (1994).

An incorrect application of the ACCA alters the otherwise-applicable statutory sentencing range:  it triggers a 15-year mandatory minimum sentence that exceeds the otherwise-applicable 10-year statutory maximum.  Accordingly, a new legal rule establishing that the ACCA was misapplied is substantive because, under the applicable version of that provision, it produces "a punishment that the law cannot impose."  *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523.  Simply stated, an Article III court has no power to lawfully impose a 15-year sentence if Congress has provided that the statutory maximum term of imprisonment is 10 years.  Indeed, a *Johnson*-based claim of error in applying the ACCA is a constitutionally-based equivalent holding to the pre-*Johnson* decisions in *Descamps* v. *United States*, 133 S. Ct. 2276 (2013), *Chambers* v. *United States*, 555 U.S. 122, 129 S. Ct. 687 (2009), and *Begay* v. *United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), which narrowed the ACCA as a matter of statutory construction: in every such case where the ACCA is misapplied, regardless of whether the error was of statutory or constitutional dimension, the statutory sentencing range for the crime has been altered in a way that renders the sentence imposed (at least 15 years)

in excess of the otherwise-applicable unenhanced 10-year statutory maximum for the crime.

This Court's decision in *Bryant* is instructive. *Bryant* held that *Begay* was a substantive rule in the ACCA context: the *Begay* decision "narrowed the scope of [the ACCA]," and thereby restricted the class of persons eligible for that enhancement; as such, it created "a significant risk * * * that some defendants, like Bryant, who were sentenced before *Begay* have erroneously received the increased penalties under Section 924(e) *and now are serving prison terms above the otherwise applicable statutory maximum of 10 years – a punishment that the law cannot impose upon them*." *Bryant*, 738 F.3d at 1278 (emphasis added).

Because *Johnson*, like *Begay*, announced a substantive rule as applied to the ACCA, "[t]here is no escaping the logical conclusion" that the combination of *Penry* and *Johnson* establishes that *Johnson* has been "made" retroactive to cases on collateral review by the Supreme Court. *Price*, 795 F.3d at 734; see also *In re Holladay*, 331 F.3d at 1172 (11th Cir. 2003) (concluding that there was "no question" that the new substantive constitutional rule of *Atkins* v. *Virginia*, 536 U.S. 304, 122 S. Ct. 2242

(2002), had been "made" retroactive to cases on collateral review when the decision was combined with *Penry*).[5/]

**B.    This Court's Unpublished Orders Denying Leave To File Successive Section 2255 Motions In ACCA Cases Are Incorrect And Need Not Be Followed**.

In the wake of *Johnson*, federal defendants across the country have been filing applications for authorization to file a second or successive Section 2255 motion in order to challenge their ACCA classifications and sentences.  See *In re Safeeullah*, No. 15-13782-E (Sept. 21, 2015); *In re Corey*, No. 15-15373-F (Sept. 15, 2015); *In re Casado*, No. 15-13682-G (Sept. 4, 2015); *In re Johnson*, No. 15-13678-A (Sept. 4, 2015); *In re Green*, No. 15-15376-G (Sept. 1, 2015); *In re Nix*, No. 15-13618-C (Sept. 1, 2015); *In Hammons*, No. 15-13606-D (Aug. 31, 2015); *In re Rowe*, No. 15-13355-G (Aug. 24, 2015) (collectively the "orders").  This Court has denied these applications, concluding that it was bound to do so in light of *In re Rivero*, 797 F.3d 986, 2015 WL 4747749 (11th Cir. Aug. 12, 2015).  See, *e.g.*, *In re Rowe*, slip op. at 2 ("Rowe * * * was convicted and sentenced under the [ACCA]. * * * We must deny Rowe's application to the extent it relies on

_____

[5/]    The Tenth Circuit's contrary view in *Gieswein* is flawed and reflects a misunderstanding of the doctrine of retroactivity-by-logical-implication set forth in *Tyler*.

-19-

Section 2255(h)(2) because [*Rivero*] held that the new constitutional rule enunciated by *Johnson* has not been made retroactive by the United States Supreme Court."); accord *In Green*, slip op. at 2; *In re Nix*, slip op. at 2-3; *In re Hammons*, slip op. at 2.  We agree with the result in *Rivero* – that guidelines claims of error cannot be certified for successive Section 2255 motion – but we disagree with certain aspects of the reasoning the Court used to reach that conclusion.  For present purposes, however, it is sufficient to note that *Rivero* was a guidelines case, not an ACCA case, see *In re Rivero*, 797 F.3d at ---, 2015 WL 4747794, at *1, and, as we have explained, different retroactivity considerations apply depending on whether the claimed error arises under the guidelines or the ACCA.  The Court did not need to extend *Rivero* beyond the guidelines setting and it should not have done so.[6/]

In any event, the orders denying authorization do not preclude the Court from granting authorization in future ACCA cases.  This Court has "treated published decisions involving applications for permission to file

---

[6/]  On September 14, 2015, the Court issued an order appointing counsel for Rivero and directing the parties to file briefs addressing whether *Johnson* claims can provide a basis for certification under Section 2255(h)(2) as applied to a guidelines claim of error.  The government will be filing a brief in that case that adheres to the views set forth in this memorandum.

a second or successive petition as binding precedent," *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015), but the orders denying leave to file successive Section 2255 motions in ACCA cases are unpublished, and thus are not "binding precedent." *Id.*; see also *United States* v. *Rosales-Bruno*, 789 F.3d 1249, 1269 n.17 (11th Cir. 2015) (reiterating that "unpublished" decisions "do not serve as binding precedent about the law"). And, while the Court may treat these orders as persuasive authority "insofar as [their] legal analysis warrants," *United States* v. *Rodriguez*, 751 F.3d 1244, 1251 n.5 (11th Cir. 2014), the orders are not persuasive because they conflate the distinct analyses of *Johnson*'s retroactivity in the ACCA and guidelines settings. See, *e.g., Borden* v. *Allen*, 646 F.3d 785, 808 n.27 (11th Cir. 2011) (declining to follow unpublished decision deemed unpersuasive).[2/]

As an original matter, the Court should hold, in line with the Seventh Circuit's decision in *Price*, that *Johnson* announced a new substantive constitutional rule as applied to the ACCA that has been "made" retroactive to cases on collateral review under *Tyler*. And the

---

[2/] The Court issued its decision in *Rivero* as well as the unpublished orders based solely on the defendant's application. See *In re Rivero*, 797 F.3d at ---, 2015 WL 4747749, at *5 n.1 (Jill Pryor, J., dissenting) (noting that "the United States has not been asked to weigh in here").

Court should grant authorization in cases where future ACCA defendants make a sufficient showing that they were incorrectly sentenced under the ACCA.

###### C. If Necessary, The Full Court Can And Should Convene En Banc To Decide Whether To Grant Authorization For Leave To File Successive Section 2255 Motions In ACCA Cases.

If, despite the foregoing, panels of this Court are inclined to adhere to the position taken in the unpublished orders, and to continue to deny future applications for leave to file successive Section 2255 motions challenging erroneous ACCA enhancements, then the government, with the Solicitor General's approval, respectfully urges the Court to convene en banc to decide this important issue.

The analysis used to deny leave in ACCA cases is incorrect and inconsistent with prior case law. And the denial of leave itself raises "serious, constitutional, separation-of-powers concerns" because it forces defendants erroneously classified and sentenced as armed career criminals to serve a sentence of imprisonment that Congress has not authorized the courts to impose. See *Bryant*, 738 F.3d at 1283; accord *Mackey* v. *Warden*, 739 F.3d 657, 662 (11th Cir. 2014). Furthermore, the denial of leave to file successive Section 2255 motions in ACCA cases conflicts with the

Seventh Circuit's decision in *Price*, and is in serious tension with the Court's own decisions in *Bryant* and *Mackey*, which granted successive collateral relief for analogous *Begay*-based ACCA errors. And lastly, while the statutory provisions that regulate applications for successive collateral relief preclude a party from filing a petition for rehearing en banc of an order granting or denying gatekeeping authorization, those provisions do not preclude a party from petitioning for initial hearing en banc, see *In re Vial*, 115 F.3d 1192, 1193 (4th Cir. 1997) (en banc), and they do not preclude the Court from granting rehearing en banc *sua sponte*, see *In re Lambrix*, 776 F.3d at 794.

1.    *The Issue Merits En Banc Consideration*.

a.  The denial of authorization in ACCA cases is incorrect. As this Court recognized in *Bryant*, the imposition of an erroneous sentence above the statutory maximum, as occurs whenever the ACCA is misapplied, presents a grave error with profound implications: it involves an Article III court of limited jurisdiction imposing "punishment in excess of that authorized by the legislature." *Jones* v. *Thomas*, 491 U.S. 376, 383, 109 S. Ct. 2522, 2526 (1989). Yet it is "axiomatic," according to this Court, that a federal court "may not impose a penalty for a crime beyond that which is authorized by statute." *United States* v. *Bushert*, 997 F.2d 1343, 1350

n.18 (11th Cir. 1993); see also *United States* v. *DiFrancesco*, 449 U.S. 117, 139, 101 S. Ct. 426, 438 (1980) ("[A] defendant may not receive a greater sentence than the legislature has authorized.").  That is because, in our federal system, an Article III court has neither the constitutional nor the statutory authority to take action – including the imposition of criminal sanctions – without legislative authorization.  See *Williams* v. *New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083 (1949) ("A sentencing judge['s] * * * task *within fixed statutory or constitutional limits* is to determine the type and extent of punishment after the issue of guilt has been determined.") (emphasis added).

A defendant who is erroneously classified and sentenced as an armed career criminal based on a residual clause conviction has been sentenced in violation of these fundamental norms.  And the resulting error establishes that the 15-year sentence that was initially imposed cannot validly be reimposed because it exceeds the unenhanced 10-year maximum – circumstances that explain why *Johnson* is a substantive rule as applied to the ACCA that has been "made" retroactive to cases on collateral review.

b.  The decision to deny authorization to file a successive Section 2255 motion in ACCA cases contributes to an existing circuit conflict that

may abate and, at the very least, creates tension, if not an outright conflict, with this Court's own precedents.

In *Price*, the Seventh Circuit agreed with the views expressed by the government and granted authorization to file a successive Section 2255 motion in an ACCA case, 793 F.3d at 733-735, but in *Gieswein*, the Tenth Circuit reached the opposite conclusion (without requesting the government's views) and denied authorization in an ACCA case, see 2015 WL 5534388, at *3-*5. But as noted above, another ACCA-ineligible defendant has since filed a petition requesting that the Tenth Circuit grant an initial hearing en banc to reconsider *Gieswein* in light of the avowed conflict it created with *Price*. Cf. *Browning* v. *United States*, 241 F.3d 1262, 1263 (10th Cir. 2001) (en banc) (granting initial hearing en banc to decide whether to authorize the filing of a successive Section 2255 motion based on *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000)).

Furthermore, this Court's orders denying authorization to file successive Section 2255 motions in ACCA cases based on *Johnson* are in serious tension with the reasoning of this Court's decisions in *Bryant* and *Mackey*, and create arbitrary and anomalous outcomes. Those decisions granted successive collateral relief under the savings clause for ACCA errors emanating from a new, retroactive rule of statutory interpretation.

See *Bryant*, 738 F.3d at 1283 ("[W]hen a prisoner convicted of a Section 922(g) crime serves more than the applicable 10-year maximum in Section 924(a) due to an erroneous Section 924(e) sentence, he * * * is being detained without authorization by any statute."). Yet the unpublished orders have denied certification for a successive Section 2255 motion under *Johnson* that presented the same overarching claim:  that the defendant was illegally sentenced above the applicable statutory maximum.   Read together, then, the Court's decisions create an anomalous regime whereby a defendant can redress an illegal ACCA sentence when the error results from a new rule of statutory construction like *Begay* (under the savings clause as construed in *Bryant*) but not when the illegal ACCA error results from a new rule of constitutional law like *Johnson* (as Section 2255(h)(2) is not available).  There is no warrant for this outcome:  whether the error is statutory or constitutional, and whether the defendant seeks relief under Section 2255 or Section 2241 should not be determinative of whether relief will be forthcoming when, in all of these cases, the resulting sentences are illegal and should be redressed.   If necessary, then, the Court should convene en banc to resolve this intracircuit dissonance and the corresponding anomalies it produces regarding the availability of successive collateral relief for ACCA errors.

See, *e.g.*, *United States* v. *Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) (noting that en banc review is an established method for resolving intracircuit conflicts).

c.    The issue is one of exceptional importance.    A defendant erroneously classified and sentenced under the ACCA has a compelling interest in avoiding detention beyond the maximum term provided by Congress for his crime, and there is no legitimate countervailing societal interest in his continued incarceration without legislative approval.  Yet the denial of leave to file a successive Section 2255 motion challenging an erroneous ACCA sentence would place the defendant's interest beyond judicial redress.  In particular, a petition for a writ of habeas corpus under Section 2255's savings clause, 28 U.S.C. § 2255(e), would not be available to a defendant who is denied authorization to file a successive Section 2255 motion.  That provision allows resort to habeas corpus when Section 2255 is "inadequate or ineffective to test the legality of [a prisoner's] detention," but the mere fact that authorization to file a successive Section 2255 motion has been denied does not, by itself, render Section 2255 "inadequate or ineffective"; were it otherwise, then the limitations on successive Section 2255 motions would be self-defeating.  See *Gilbert* v. *United States*, 640 F.3d 1293, 1308 (11th Cir. 2011) (en banc).

-27-

This Circuit, moreover, has never found Section 2255 "inadequate or ineffective" as applied to a new *constitutional* rule like *Johnson*. And with good reason: unlike new rules of statutory construction, new rules of constitutional law, like *Johnson*, do not categorically elude the permission for second-or-successive Section 2255 motions. A prisoner who cannot meet the stringent standards required to obtain authorization to file a successive Section 2255 motion set forth in Section 2255(h) will not obtain relief, but the denial of relief on the merits does mean the remedy provided by Section 2255 is inadequate or otherwise permit the defendant to end-run Section 2255(h) by re-filing his pleading as a habeas petition under Section 2241. See *Antonelli* v. *Warden*, 542 F.3d 1348, 1351-52 & n.1 (11th Cir. 2008) ("[F]ederal prisoners cannot avoid the procedural restrictions on Section 2255 motions by changing the caption on their petition to Section 2241.").

2.    *En Banc Consideration Is Statutorily Permissible*.

Section 2255(h) states that a second or successive Section 2255 motion "must be certified as provided in section 2244." Section 2244, in turn, sets forth various procedures that regulate applications for leave to file successive applications by state and federal prisoners, and, "[i]n the absence of * * * specification, it is logical to assume that Congress intended

to refer to all of the subsections of Section 2244 dealing with the authorization of second and successive motions." *Triestman* v. *United States*, 124 F.3d 361, 367 (2d Cir. 1997). Although three of Section 2244's subsections potentially implicate the availability of en banc consideration, none precludes such consideration.

a. *Section 2244(b)(3)(E)*. This provision states that "[t]he grant or denial of an authorization by a court of appeals to file a successive application shall not be appealable and shall not be the subject of a petition for rehearing or a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). By its terms, this statutory restriction is triggered when a party files a "petition for rehearing" (which includes panel and en banc rehearing, see *Lykus* v. *Corsini*, 565 F.3d 1, 1 (1st Cir. 2009) (en banc)) seeking review of an order "grant[ing] or den[ying]" authorization to file a successive Section 2255 motion. This provision does not place orders granting or denying authorization "beyond all review," however. For one thing, it "does not preclude [this Court] from rehearing * * * a decision [granting or denying authorization] *sua sponte*." *In re Lambrix*, 776 F.3d at 794; see also *Castro* v. *United States*, 540 U.S. 375, 381, 124 S. Ct. 786, 791 (2003) (reiterating the "basic principle" that federal courts "read limitations on [their] jurisdiction to review narrowly"). Nor does this provision preclude a

party from filing a petition for an initial "hearing" en banc on the threshold question of whether authorization should be granted in the first instance: such a petition does not seek "rehearing" of a decision granting or denying authorization but instead requests en banc review of whether authorization should be granted in the first instance. See 28 U.S.C. § 46(c) (courts of appeals may order "a hearing *or* rehearing before the court in banc") (emphasis added); see also, *e.g.*, *Browning*, 241 F.3d at 1263 (granting initial hearing en banc to decide authorization question); *In re Vial*, 115 F.3d 1192, 1193 (4th Cir. 1997) (en banc) (same).

b. *Section 2244(b)(3)(B).* This provision states that an applications for "an order authorizing the district court to consider a second or successive [motion] shall be determined by a three-judge panel of the court of appeals." 28 U.S.C. § 2244(b)(3)(B); see also 28 U.S.C. § 2255(h) (certification must be made "by a panel of the appropriate court of appeals"). While this provision requires that the "determin[ation]" of whether to grant or deny authorization must be made by a "three-judge panel," it does not preclude the courts of appeals from convening en banc to resolve overarching questions of law that inform whether a successive motion should be authorized, and then permitting a "three-judge panel"

to thereafter "determine[]," based on the en banc court's interpretation of the law, whether authorization should be granted or denied.

c. *Section 2244(b)(3)(D).*  This provision states that the courts of appeals "shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the application." 28 U.S.C. § 2244(b)(3)(D).  Admittedly, it would be difficult (though not impossible) for a court of appeals to consider a case en banc within a 30-day time frame, even on an expedited basis.  See, *e.g.*, Fed. R. App. P. 2 (courts of appeals may, on their motion of that of a party, suspend operation of the rules of appellate procedure "to expedite its decision or for other good cause"); *United States* v. *Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc) (en banc decision issued without oral argument).  But the Court could convene en banc to decide the pertinent legal question – here, whether *Johnson* has been "made" retroactive – and then instruct a three-judge panel to issue an order that simply grants or denies authorization within the 30-day time frame with a notation that a written opinion explaining the decision will be issued as soon as practicable thereafter.  See *Jiminian* v. *Nash*, 245 F.3d 144, 145 (2d Cir. 2001) (Sotomayor, J.) (court entered an order denying authorization three

-31-

days after the application was filed with a notation that a written opinion would issue thereafter; written opinion issued three months later).

And if the Court ultimately concludes that en banc consideration is warranted and that it cannot reasonably be accomplished within the 30-day time period, the Court would have the discretion to exceed that time period because, as every circuit to consider the issue has held, this time provision is "hortatory or advisory rather than mandatory." *In re Williams*, 330 F.3d 277, 280-281 (4th Cir. 2003) (collecting cases); cf. *Dolan* v. *United States*, 560 U.S. 605, 611, 130 S. Ct. 2533, 2538 (2010) (citing cases holding that "a deadline seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed"). As one court has explained, Section 2244(b)(3)(D) does not prevent the courts of appeals from employing a more deliberative judicial process "[i]n a small number of extraordinary cases [when] the courts cannot perform their assigned judicial function under the Constitution without a more thorough exploration of the legal arguments than is possible in the statutory period." *Grey-Bey* v. *United States*, 201 F.3d 866, 868 (7th Cir. 2000); see also *Galtieri* v. *United States*, 128 F.3d 33, 36-37 (2d Cir. 1997) (concluding that, in those "few

-32-

instances" where compliance with the 30-day time period cannot be achieved, "we do not think that Congress wanted courts to forgo reasoned adjudication"), abrogated on other grounds, 130 S. Ct. 2788 (2010).

## III. Guidelines Cases.

### A. *Johnson* Is A New Procedural Rule As Applied To The Guidelines And It Has Not Been "Made" Retroactive By The Supreme Court To Guidelines Cases On Collateral Review.

The retroactive character of *Johnson* in ACCA cases on collateral review does not govern the separate question of whether *Johnson* applies retroactively to cases involving misapplications of the federal Sentencing Guidelines, particularly the career-offender guideline. And the same principles that dictate that *Johnson* is retroactive in ACCA cases dictate that *Johnson* is not retroactive in guidelines cases on collateral review.

1. The application of *Johnson* to the ACCA is a substantive change in the law because it necessarily alters the statutory range of permissible sentences (by triggering an otherwise-inapplicable mandatory minimum, elevating the statutory maximum and producing a sentence that necessarily exceeds the otherwise-applicable unenhanced statutory maximum). By contrast, a rule extending *Johnson* and concluding that it invalidates the crime-of-violence residual clause in the guidelines would

establish that the defendant's guidelines range was incorrectly calculated, but it would not alter the statutory boundaries for sentencing set by Congress for the crime. Instead, such a rule would produce changes in how the sentencing process is to be conducted – procedural changes that are not entitled to retroactive effect in cases on collateral review.

An error in calculating a defendant's guidelines sentencing range does not (and could not) alter the statutory sentencing range set by Congress for the crime within which the sentencing court may impose a sentence, and it would not (and could not) produce a sentence that exceeds the statutory maximum: the Sentencing Commission has no authority to override Congress. See *Mistretta* v. *United States*, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Indeed, guidelines sentences must always be within the limits set by Congress and can never validly exceed a legislatively-fixed statutory maximum. As this Court has explained, "[f]or each crime, Congress prescribes a punishment ceiling beyond which no defendant convicted for committing that particular crime may be sentenced regardless of the circumstances of the crime, regardless of the defendant's history, and

regardless of the sentencing guidelines. * * * To the extent of any inconsistency, the guidelines would have to bend to statutorily prescribed limits, not the other way around." *Gilbert*, 640 F.3d at 1306-1307.  A guidelines sentence imposed on the basis of an incorrect guidelines range may be erroneous, but it is not illegal or unlawful as would be true in a case involving prejudicial *Johnson* error under the ACCA.  See *Sun Bear* v. *United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (explaining that "Sun Bear's 360-month [guidelines] sentence," imposed on the basis of an error in classifying him as a mandatory career offender, "is not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").  Accordingly, as applied to a guidelines claim, *Johnson* announced a procedural rule governing sentencing because it regulates how the sentencing process operates rather than altering the statutory parameters for sentencing. And because this new procedural rule does not rank as a watershed rule of criminal procedure, it follows that this rule has not been "made" retroactive to cases on collateral review. See *Tyler*, 533 U.S. at 669-671 (O'Connor, J., concurring).[8/]

---

[8/]  In pre-*Johnson* litigation, the government took the position that new statutory rules narrowing eligibility for a sentencing enhancement are substantive and retroactive to cases on collateral review regardless of whether the enhancement arose under the ACCA or the career-offender

2. The application of *Johnson* to the guidelines also depends on the recognition of an additional new procedural principle: the conclusion that sentencing guidelines that form part of the process for determining a defendant's sentence within a statutory range must conform to constitutional standards that prohibit vague criminal laws.

The government does not dispute that, in light of the Supreme Court's analysis of the guidelines in applying Ex Post Facto principles, see

_____

guideline. See, *e.g.*, *Rozier* v. *United States*, 701 F.3d 681, 684 (11th Cir. 2012) (noting government's concession that *Johnson* v. *United States*, 559 U.S. 133, 130 S. Ct. 1265 (2010), was retroactive in a guidelines case). Courts considering the issue uniformly agreed that these new rules were indeed retroactive in ACCA cases, see *Welch* v. *United States*, 604 F.3d 408, 415-416 (7th Cir. 2010), and while some courts agreed that the rules were retroactive in guidelines cases as well, other courts expressed doubts on that issue in cases involving the formerly-mandatory guidelines, see *Sun Bear* v. *United States*, 644 F.3d 700, 703 (8th Cir. 2011) (en banc), and the now-advisory guidelines, see *Hawkins* v. *United States*, 724 F.3d 915, 917-918 (7th Cir. 2013) (supplemental opinion). In light of these decisions, the government has reexamined its retroactivity position as far as the guidelines are concerned and is now of the view that new rules relating to the calculation of a defendant's guidelines range (mandatory and advisory alike) are procedural, not substantive, and hence are not retroactive to cases on collateral review. The government's prior contrary concessions do not bind this Court. See *United States* v. *Lee*, 586 F.3d 859, 866 (11th Cir. 2009). Nor do those contrary concessions confer any rights upon defendants. Cf. *United States* v. *Apel*, 134 S. Ct. 1144, 1151 (2014) ("Their views may reflect overly cautious legal advice based on division in the lower courts. Or they may reflect legal error. Either way, we have never held that the Government's reading of a criminal statute is entitled to any deference.").

*Peugh* v. *United States*, 133 S. Ct. 2072 (2013), and *Johnson*'s articulation of vagueness doctrine in the sentencing context, today, the Sentencing Guidelines must meet due process vagueness standards. In *Matchett*, this Court concluded otherwise with respect to the advisory guidelines, see 2015 WL 5515439, at *6, but the Court's reasoning confirms that, at the very least, the adoption of this principle would require the announcement of a new rule. It would require the courts to combine – and thereby extend – two distinct lines of precedent, one of which applied due-process vagueness principles to sentencing statutes and one of which concluded that the advisory guidelines implicate a separate constitutional provision (the Ex Post Facto clause) that is tied in part to notice principles.

A rule requiring that particular Sentencing Guidelines must be drafted with the same level of specificity as criminal statutes in order to satisfy due process vagueness concerns would not only be new, it would also be procedural. It would dictate *how* Sentencing Guidelines must be framed in order to comply with due process; it would not dictate any particular substantive outcomes. This is evident from the sentencing process in the federal system, which encompasses at least three steps: first, a court determines the applicable guidelines range by applying the guidelines to the facts; second, it determines whether any deviations from

-37-

that range are warranted (either by way of a "departure" or, in the post-*Booker* era, a "variance); and third, it determines the appropriate sentence. Because the calculation of the guidelines range is itself merely a step in the process whereby a judge determines the appropriate sentence to impose, a rule requiring that the sentencing range (at step one) be defined with a certain level of precision is a rule of process. It relates to the *manner* for determining the starting point for federal sentencing – the initial calculation of the sentencing range – but it does not dictate particular sentencing outcomes, or even alter the permissible range of outcomes.

This is particularly true for the advisory guidelines system in place after *Booker*: sentencing courts must calculate and consider the sentencing range, but the overarching obligation of a sentencing court is to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing. 18 U.S.C. § 3553(a); *Kimbrough* v. *United States*, 552 U.S. 85, 101, 128 S. Ct. 558, 570 (2007). A rule that the guidelines, particularly advisory ones, must satisfy due process vagueness standards therefore differs fundamentally and qualitatively from a holding that a particular criminal statute or sentencing provision is substantively vague. And, as with a rule extending *Johnson* to the guidelines, a rule allowing vagueness challenges to the guidelines themselves is not a watershed rule

of procedure.  It would not recognize a new bedrock right but merely extend an existing legal principle – the prohibition against vague laws – to the guidelines.  No prior decision or combination of decisions compels the conclusion that this new, non-watershed rule of procedure has been made retroactive to cases on collateral review by the Supreme Court.

> **B.    This Court's Decision In *In Re Rivero* Denying Leave To File A Successive Section 2255 Motion In A Guidelines Case Is Correct But Portions Of Its Reasoning Are Incorrect.**

In *In re Rivero*, this Court denied a federal prisoner's application for leave to file second-or-successive Section 2255 motions seeking to challenge an erroneous mandatory career-offender designation and sentence based on *Johnson*.  The Court agreed that *Johnson* announced a new rule of constitutional law that was previously unavailable, *id*. at *2.  And, although the Court described *Johnson* as having articulated a "substantive rule of constitutional law," *id.*, it concluded that the Supreme Court had not yet "made" *Johnson* retroactive to cases on collateral review, *id*.  According to the Court, "the rule announced in *Johnson* does not meet the criteria the Supreme Court uses [in *Tyler* v. *Cain*] to determine whether the retroactivity exception for new substantive rules applies."  *Id*.  The Court reasoned that *Johnson* held that the ACCA "does not" permit a

sentence to be based on the vaguely-worded residual clause, and not that "Congress *could not* impose a punishment for that same prior conviction in a statute with less vague language." *Id*.

   We agree with the result in *Rivero* – denial of leave to file – but we disagree with two critical aspects of the Court's reasoning. First, for the reasons set forth above, *Johnson* did not announce a substantive rule as applied to the claimed error in applying the Sentencing Guidelines. The error caused the sentencing court to use an incorrect guidelines range when sentencing Rivero, but the error did not alter the fixed statutory boundaries set by Congress for the crime and Rivero remains eligible to receive the same sentence without the disputed enhancement. The misclassification of Rivero as a career offender thus did not expose Rivero to "a punishment that the law cannot impose," *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523, or increase any statutory minimum punishment, and thus was not a substantive change in the law that has been "made" retroactive to cases on collateral review by the Supreme Court.

   Second, the Court declined to apply *Johnson* retroactively, even though it treated the rule as substantive, because "*Johnson* did not hold that Congress *could not* impose a punishment for that same prior conviction in a statute with less vague language." *Rivero*, 797 F.3d at ---,

-40-

2015 WL 4747749, at *2 (emphasis in original). The Court cited no authority for this proposition, however, and the government is unaware of any authority supporting that novel approach to retroactivity. In our view, the inquiry into whether a rule is substantive does not turn on the hypothetical possibility that Congress "could" have enacted a statute authorizing the punishment: it is sufficient if this particular defendant could not have received this particular punishment under this particular provision. Indeed, even if Congress were to amend the ACCA with less vague language, the Ex Post Facto Clause would bar the courts from applying the amended statute retroactively to a particular defendant who was wrongly sentenced under the ACCA based on pre-amendment conduct. See *Peugh*, 133 S. Ct. at 2077-2078 ("The Constitution forbids the passage of ex post facto laws, a category that includes every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."); *Kirby* v. *Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (same).

*Rivero*'s reasoning is also at odds with decisions of both the Supreme Court and this Circuit, which have declared new substantive rules to be retroactive even though the conviction or sentence "could" have lawfully been imposed under a yet-to-be-enacted hypothetical statute. In *Bousley*,

for example, the Supreme Court held that its prior decision in *Bailey* narrowing Section 924(c)'s "use" element (by requiring active employment of a gun rather than mere possession) was a substantive rule. In so holding, the Court did not address, or even deem relevant, the fact that Congress could have passed a law proscribing mere possession of a gun in relation to a drug crime – as Congress later did, see *United States* v. *Miranda*, 666 F.3d 1280, 1282-1283 (11th Cir. 2012) (noting that Section 924(c) was amended to proscribe possession in the wake of *Bailey*). Similarly, in *Bryant*, this Court concluded that *Begay* was a new substantive rule as applied to an ACCA error without ascribing any legal significance to the fact that the defendant "could have" received the same 15-year sentence if Congress had simply amended Section 924(a)(2) to authorize that term of imprisonment independent of the ACCA. Although these decisions involved substantive statutory holdings, nothing in the Supreme Court's reasoning in *Bousley* or this Court's reasoning in *Bryant* restricts their application to substantive statutory rules.  Rather, a logically compelled consequence of *Bousley* is that a constitutional holding that narrows the reach of a statute, as *Johnson* does to the ACCA, is similarly substantive.

Thus, while we agree that the Court in *Rivero* correctly denied the application for leave to file, we reach that conclusion because *Johnson* is not a substantive rule as applied to the guidelines and has not been "made" retroactive by the Supreme Court to cases on collateral review.

\*    \*    \*

To summarize, the government's positions are as follows:

1. *Johnson* is a substantive holding as applied to the ACCA that applies retroactively to cases on collateral review.

2. *Johnson* has been "made" retroactive by the Supreme Court to cases on collateral review for purposes of 28 U.S.C. § 2255(h)(2) through a combination of holdings, and thus can support certification of a second or successive Section 2255 motion.

3. *Johnson*'s vagueness holding applies in guidelines cases on direct review, but that principle is not retroactive to cases on collateral review because it is a new, non-watershed rule of procedure.

4. *Johnson* claims alleging Sentencing Guidelines error, such as misclassification as a career offender, cannot support Section 2255 relief and do not warrant certification of a second or successive Section 2255 motion.

5.  The result in this Court's published decision in *Rivero* accords with the government's position concerning the unavailability of successive Section 2255 relief for guidelines errors, but the reasoning of that decision, and the Court's denial of certification of ACCA claims in unpublished decisions, does not accord with the government's positions.

6.  If a three-judge panel does not believe itself free to adopt the government's positions, particularly with respect to the availability of successive Section 2255 relief for ACCA errors, the full Court has the authority to hear a case en banc to consider these matters, and, in view of the exceptional importance of these issues, should do so.

Respectfully submitted,

LESLIE R. CALDWELL
  *Assistant Attorney General*
  *Criminal Division*
  *United States Department of Justice*

SUNG-HEE SUH
  *Deputy Assistant Attorney General*

/s *Michael A. Rotker*
MICHAEL A. ROTKER
  *Attorney*
  *Appellate Section*
  *950 Pennsylvania Avenue, N.W.*
  *Suite 1264*
  *Washington, DC 20530*
  *(202) 532-6047*
  *michael.rotker@usdoj.gov*

September 25, 2015

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the

foregoing Memorandum for the United States to be served this 25th day

of September 2015 via email on the following:

The Honorable Amy Nerenberg
Acting Clerk of the Court
United States Court of Appeals
   for the Eleventh Circuit
amy_nerenberg@ca11.uscourts.gov

Christina L. Hunt, Esq.
Executive Director
Federal Defenders of the Middle District of Georgia, Inc.
Tina_Hunt@fd.org

Steven L. Beauvais, Esq.
Zipperer Lorberbaum & Beauvais
Southern District of Georgia Defender Liaison
sbeauvais@zlblaw.com

Kevin L. Butler, Esq.
Federal Public Defender
Kevin_Butler@fd.org

Stephanie Kearns, Esq.
Federal Defender Program, Inc.
Northern District of Georgia
Stephanie_Kearns@fd.org

Michael Caruso, Esq.
Federal Public Defender
Federal Public Defender's Office
Michael_Caruso@fd.org

Randolph P. Murrell, Esq.
Federal Public Defender
Office of the Public Defender for the
  Northern District of Florida
Randoph_Murrell@fd.org

Carlos Williams, Esq.
Federal Defenders, Inc.
Carlos_Williams@fd.org

Donna Lee Elm, Esq.
Federal Defender's Office
Middle District of Florida
Donna_Elm@fd.org

Christine A. Freeman, Esq.
Executive Director
Federal Defenders
Christine_Freeman@fd.org


/s *Michael A. Rotker*
MICHAEL A. ROTKER
  *Attorney*